Filed February 8th, 1904.

————o————

No. 3389.

(Court of Appeal, Parish of Orleans.)

JOHN T. HARDIE'S SONS & CO. vs. WOLF, MARKS & CO.

Agreements legally entered into have the effect of law upon those who have formed them; and the resolutory condition they contain and provided for will take place where the happening of such condition cannot be attributed to one of the parties bound, R. C. C. 2045-2046.

Judge Moore dissents in a separate opinion.

Appeal from Civil District Court, Division E.

T. M. Miller, for plaintiff and appellee.

Saunders & Gurley, for defendant and appellants.

BEAUREGARD, J.   The question in this case is, on behalf of plaintiffs, simply one of a violation of agreement entered into under a resolutory condition, which having happened matured defendant's indebtedness towards plaintiff and warranted the judgment of the Court a qua in their favor for $500, from which judgment defendants have appealed.

On behalf of defendants, besides the general issue tendered their defense is substantially that if the condition to the agreement did happen it was brought about by plaintiff's laches which discharged defendants from any liability.

It seems that one Gus. Hartman, a merchant doing business as such in Farmerville, La., and in business relations with Wolf, Marks & Co., a New Orleans firm of which Mr. Loewenberg was a member, forwarded to this firm his draft of October 15, 1900, in their favor and drawn on the firm of John T. Hardie's Sons & Co. of this city.

Prior to this date, in May, 1900, it further seems that Hartman

115

who had attempted, without success, to sell in this city his three flat boat loads of staves amounting to 153,533 pieces, placed the matter in the hands of J. T. Hardie's Sons & Co., who thereupon and at various dates commenced making advances to Hartman, and in July of that year, in disposing of these staves.

On or about its receipt, the draft referred to was twice presented for payment by the clerk of Wolf, Marks & Co. to the drawers and payment declined. Then it was that Mr. Loewenberg interviewed Hardie's Sons & Co. on the subject, resulting in an explanation of the latter's account with Hartman, and "upon Mr. Loewenberg agreeing to reimburse us, in the event the staves held for Hartman should not be sufficient to pay what he then owed us, we agreed to pay it (the draft) and not make any further advances to Hartman." And this agreement was endorsed on the draft, and separately signed by the parties thereto, except, that a few words were omitted in the endorsement of Wolf, Marks & Co. as to which no exception is taken, and that Hardie's Sons & Co. mentioned in their endorsement that Hartman's indebtedness to them amounted, at the time to $9318.12.

Thus the draft was paid on November 16, 1900.

And the staves were, by lots, from July 19, 1900, to September 12, 1901, at various dates sold out, leaving a balance due by Hartman to Hardie's Sons & Co. of $3352 to whom account was rendered, reciting and including the Wolf, Marks & Co's draft of $500.

In January, 1902, Hartman failed. Reimbursement of amount of the draft was demanded of the defendant firm, which was refused, and this suit in March, 1902, followed.

Defendants, as stated above, set up plaintiff's laches in disposing of these staves, which had they been sold at the market prevailing prices would have cancelled Hartman's indebtedness to them and as a consequence the amount of the draft.

That at no time, from November 16, 1900, to September 12, 1901, were defendants apprised of the condition of Hartman's account with and from plaintiffs. That, had they (the defendants) had such notice, they could have taken such measures as would have protected them prior to Hartman's failure and with whom, as merchants, they continued to deal after payment of said draft.

The reading of the record fails to substantiate defendant's claim of plaintiff's laches. No term was fixed by the parties at which the staves were to be finally sold R. C. C. 2049. Defendants were aware at the incipiency of their transactions with plaintiffs of the latter's standing account with the owner of the staves. Defendants are, in truth not concerned with any of the sales of staves made prior to November 16, 1900, since the draft was paid only then but the evidence of witnesses shows that during the years 1900 and 1901 that "never in the history of the Stave Market" had there been such a glut of staves and that it took much time to work them off.

Plaintiffs sought, however to avail themselves of an expert

116

stave broker and sold the staves by lots at points excluding the then market price.

Certainly said the broker (a witness in the case) they could have been sold at ruling market prices, if the intention had been to "give them away."

Plaintiffs could have had no interest in perpetuating or increasing Hartman's indebtedness to them. Even the testimony of one of defendants' witnesses as to the rapid or reasonable sale of staves during the period mentioned is vague and unsatisfactory. He was himself an exporter of staves, and intimates that likely, judging from the plaintiff's account. they were sold to the local trade, thereby excluding the inference that they had been held and sold by plaintiffs on speculation, but sold under the best and readiest offers, and indirectly proving that these sales were made under adverse circumstances.

Plaintiffs' failure to give notice to defendants of their account with Hartman could neither add to nor detract from the agreement between plaintiffs and defendants. As this agreement stood, the parties had reciprocally taken their chances in view of an uncertain event. However this may be, it is of record that Mr. Loewenberg did (sometime after payment of the draft) meet one of the firm of Hardie's Sons & Co., and their account with Hartman was the subject of conversation. Mr. Loewenberg denies that his inquiry about Hartman was otherwise but general; Mr. Hardie states that it was specific and positive, informing Mr. Loewenberg that he (Hardie) told him that his firm had not yet disposed of all the staves, which would not pay Hartman's account and that his firm would have to look to Loewenberg (or his firm) for payment of the $500. This conversation took place sometime before Hartman's failure.

Applying the rule that positive must prevail over negative testimony, apart from the binding obligation of the parties between themselves and as stated above, the want of that notice of which defendants complained they did not have is not borne out.

Defendants further ground of complaint that had they been notified seasonably they could have taken such measures as would have protected them, as against the Hartman's failure is hypothetical, for, even after the payment twice declined of a draft of $500 which was cashed, after a third demand of payment, and this under an existing condition, they continued their business relations with Hartman. And it is patent that they did not avail themselves of any knowledge of Hartman's actual business status, since they admitted to have been involved in his failure to the extent of $1,300 and to have received a dividend of from 10 cents to 12 cents on the dollar.

Plaintiffs account rendered to Hartman in which is mentioned as an item the $500 paid to Wolf, Marks & Co., was but the evidence of the balance due to appellees who were bound to render a final statement to Hartman. This did not affect the separate and

117

distinct agreement they, as creditors of Hartman had made with another of the latter's creditors.

We fail to appreciate the ground, urged in argument of guarantors or sureties by Wolf, Marks & Co. of Hartman and only secondarily bound. The happening of the resolutory condition under which defendants were bound to the plaintiffs ripened the former's liability and made it exigible.

We are therefore of the opinion that the judgment appealed from should be affirmed, and it is so ordered.

Judgment affirmed.

Filed February 8, 1904.

Rehearing refused.